UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
GREENEVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | 2:23-CR-79 |
| | ) | |
| vs. | ) | |
| | ) | |
| ERIC LEBRON BURNEY, | ) | |
| | ) | |
| Defendant. | ) | |

**REPORT AND RECOMMENDATION**

Defendant filed a Motion to Suppress [Doc. 16] seeking the suppression of evidence obtained during a traffic stop of Defendant on April 1, 2023. The United States filed a Response in opposition to Defendant's Motion [Doc. 18]. The Court held a hearing to address the Motion on February 8, 2024. Present at the hearing were Defendant and his counsel, Willie Santana, Esq., and Assistant United States Attorney Christian Lampe. Trooper William Connors was called to testify by the United States. This matter is before the Court pursuant to 28 U.S.C. § 636(b) and the standing orders of the District Court for a Report and Recommendation. The matter is now ripe for resolution. For the reasons stated herein, the undersigned **RECOMMENDS** that the Motion to Suppress [Doc. 16] be **DENIED**.

   I.   **BACKGROUND**

On June 13, 2023, a federal grand jury returned an indictment against Defendant charging him with possession with intent to distribute 50 grams or more of methamphetamine in violation of 21 U.S.C. § 841(a)(1), (b)(1)(A). This basis for the charge was methamphetamine that officers located while searching Defendant's vehicle during the April 1, 2023 traffic stop.

In his Motion, Defendant argues that the search of his vehicle violated his Fourth Amendment right to be free from unreasonable searches and seizures, because the search exceeded the scope of probable cause. Defendant concedes that Troopers Connors and Burchett[1] initially had a valid basis to conduct a traffic stop on April 1, 2023, based on Defendant's illegal window tint and the troopers' belief that he was following the vehicle in front of him too closely. However, Defendant argues that after the troopers claimed to have smelled marijuana on Defendant while he was in his vehicle, they exceeded the scope of a lawful search of the vehicle by pulling out the center console and removing an air vent. While Defendant acknowledges that the smell of marijuana emanating from a vehicle gives officers probable cause to search the vehicle, he asserts that it does not provide probable cause for them to conduct the extensive search that they undertook. Defendant asserts that the troopers were only permitted to search "areas where recently smoked marijuana could be found, such as around the floorboards, in any ash trays, consoles, or readily accessible glove compartments." Defendant claims that instead of this more limited search, officers engaged in "disassembling his entire vehicle" to search areas where Defendant himself could not quickly access, and in so doing, contends they violated his Fourth Amendment rights.

In response, the United States avers that the smell of marijuana in Defendant's vehicle alone gave the troopers probable cause to search the entire vehicle based on Sixth Circuit precedent but point out that this was not the only probable cause the troopers had that justified the search of Defendant's center console and other areas of his vehicle. The United States explains that the troopers initially had probable cause to search Defendant's vehicle for contraband because they observed his vehicle with illegally dark window tint, he was driving too closely behind a semitruck,

---

[1] Trooper Burchett's first name was not provided.

and he had a window rolled down on the interstate.[2] In searching the driver's side area of the vehicle, Trooper Connors immediately observed a piece of plastic strip that had been pulled out of the doorframe. Then while conducting the search, he noted that the carpeting on the driver's side appeared to have been pulled up before and found a loose white pill he was able to identify as Percocet laying in the driver's seat. While Trooper Connors initially searched the driver's compartment, Trooper Burchett was searching the passenger compartment and discovered that a screen on the center of the dashboard had visible pry marks. After searching the trunk, Trooper Connors then came back around to inspect the gearshift, at which time a plastic plate came up, revealing a void containing two plastic bags of methamphetamine and a digital scale. The United States asserts that Trooper Connors would testify that the apparent pry marks in Defendant's vehicle were consistent with someone having previously pulled pieces apart to store drugs based on his training and experience.

## II. FINDINGS OF FACT

On April 1, 2023, Defendant was driving on Interstate 81 in Greene County, Tennessee when Tennessee Highway Patrol Troopers Connors and Burchett conducted a traffic stop after observing that Defendant had illegally dark window tint, making it impossible to see into the car, a silver Chevrolet Malibu. Trooper Connors testified that they had also observed Defendant following closely behind a semitruck and rolling down his window on a highway.[3] When Trooper Connors approached Defendant's vehicle on the passenger side and spoke to him through the

---

[2] The Court would not find that these three facts alone, without the troopers having smelled the odor of marijuana, would have provided probable cause to search Defendant's vehicle but the blacked-out windows and the fact that they were all rolled down by the time officers approached the vehicle does certainly provide additional probable cause when considered along with the odor of marijuana the officers smelled.

[3] Defendant concedes that the stop for dark window tint was valid but does not concede that he was following too closely. [Doc. 16, p. 9]. Regardless, the validity of the stop is not at issue here because it is agreed that there was at least one valid basis for the stop.

window, the trooper noticed a strong smell of marijuana "rolling out" of the vehicle. Trooper Connors then asked Defendant to exit the vehicle for a pat down search. Defendant was asked about the marijuana smell during the pat down and admitted that he had smoked marijuana earlier in the day. [Connors at 0:03:13; Burchett at 0:03:15].[4] Trooper Connors then instructed Defendant to wait in the patrol car while Troopers Connors and Burchett searched his vehicle. Trooper Connors began searching the driver's side area and noticed that the carpet on the floor of the driver's side appeared to have been pulled out and there were pry marks on the trim, indicating that the vehicle may have been searched previously. [Connors at 0:12:16]. Trooper Connors testified, and the body camera footage reveals, that he easily pulled the trim up with his hand without requiring a tool to do so. [Connors at 0:12:22]. Trooper Connors further testified that he had extensive law enforcement experience working in the field of interdiction, which involves investigating those suspected of traveling through the state committing felonies. He testified that based on this experience he knows that "trap" compartments may be used to disguise contraband in portions of vehicles like doors or the center console.

While Trooper Connors was searching the driver's side, Trooper Burchett was searching the passenger side of the vehicle and noticed that the carpet also appeared to have been pulled up on that side previously, and a screen in the center of the dashboard had pry marks which indicated to Trooper Burchett that the screen had been pulled out before. [Burchett at 0:13:27-0:13:55]. Trooper Burchett then asked Trooper Connors for a pry tool, which Trooper Connors provided. [Burchett at 0:14:00-0:14:41]. Trooper Burchett then inspected the screen and reported that it

---

[4] Defendant submitted three recordings into evidence at the hearing. Trooper Connors's body camera footage was admitted as Exhibit 1A, Trooper Burchett's body camera footage was admitted as Exhibit 1B, and the dashcam footage from the patrol car was admitted as Exhibit 1C. In this recitation of the facts, the Court will refer to the body camera footage by the trooper's last name and the relevant timestamp.

"popped out real easy" and that there was what appeared to be remnants of tobacco behind the screen. [Burchett at 0:14:38-0:17:11]. It is not possible to determine from the body camera footage whether there were pry marks on the dashboard, and on cross examination and during argument, Defendant's counsel suggested that any marks might have simply been due to the poor condition of the interior of the vehicle. During the search, Trooper Burchett further discovered a white pill laying in the driver's seat and asked Trooper Connors if the pill looked like a Percocet. [Burchett at 0:18:58]. After searching on his phone on drugs.com for what a Percocet pill looks like, Trooper Connors confirmed that the white pill likely was Percocet. [Burchett at 0:20:00].

Trooper Connors then continued to search the front seat of the vehicle, this time on the passenger side. In doing so, he easily pulled out with his hands the center console area where the cupholders are located and uncovered bags of methamphetamine and a scale within that area. [Connors at 0:21:12-0:21:20]. In the remainder of the body camera footage, the troopers continue to search the vehicle and ultimately arrest Defendant.

While Defendant takes issue with the overall scope of the search in this matter, on cross examination, defense counsel specifically attacked Trooper Connors's credibility in two ways. First, defense counsel asked if Trooper Connors had any written materials to be disclosed pursuant to Fed. R. Crim. P. 26, which he had not yet provided and gave a laundry list of examples of the type of written communication he was seeking. Trooper Connors indicated that he did not have any such material and defense counsel then introduced still images of portions of the trooper's bodycam footage indicating that Trooper Connors was texting during the search of Defendant's vehicle.[5] Defense counsel further orally provided an extensive list of time stamps from Trooper

---

[5] The images were admitted into evidence as Exhibit 3 to the hearing.

Connors's body camera indicating points when the trooper was texting during the search. Trooper Connors testified that he had texted local officers during the search to see what he could find out about Defendant. Trooper Connors had his cellphone with him during the hearing and was provided an opportunity to see if any of the text messages were still in his possession, and he advised that they were not. The Court does not find, given the totality of the circumstances, that the trooper's testimony on this issue reflects any lack of credibility.

Additionally, defense counsel introduced the Report and Recommendation of a magistrate judge in this District who had found Trooper Connors's testimony to lack credibility in a previous case.[6] *United States v. Hayes, et al.*, No. 3:19-CR-00073-TAV-HBG [Doc. 35]. The Court finds that case to be distinguishable from the present one, because in that case Trooper Connors's testimony about the speed at which a vehicle was traveling conflicted with other evidence whereas in this case, Trooper Connors's testimony largely tracks with the body camera footage. However, even if the Court were to find Trooper Connors's testimony less than credible here, which it does not, the body camera footage provides sufficient information for the Court to independently assess the facts pertaining to the search of Defendant's vehicle under applicable law.

### III. ANALYSIS

The Fourth Amendment guarantees "[t]he right of the people to be secure ... against unreasonable searches and seizures...." U.S. Const. amend. IV. Warrantless searches and seizures in private areas are presumptively unreasonable unless an exception to the warrant requirement applies. *Payton v. New York*, 445 U.S. 573, 586–88 (1980). One such exception is the automobile exception, which allows law enforcement officers to search a vehicle where the search is supported

---

[6] A copy of the Report and Recommendation was entered into evidence as Exhibit 4 to the hearing.

by probable cause. *United States v. McGhee*, 672 F. Supp. 2d 804, 812 (S.D. Ohio 2009) (citing *Maryland v. Dyson,* 527 U.S. 465, 466–67 (1999); *United States v. Ross,* 456 U.S. 798, 807–09 (1982)). The Sixth Circuit has held that "an officer's detection of the smell of marijuana in an automobile" on its own is enough to establish probable cause for a search. *United States v. Johnson*, 707 F.3d 655, 658 (6th Cir. 2013) (citing *United States v. Bailey*, 407 F. App'x 27, 28-29 (6th Cir. 2011)). In conducting a probable cause analysis, "there is no difference between burnt and fresh-smelling marijuana." *United States v. Robinson*, No. 1:07-CR-1, 2007 WL 2138635, *2 (E.D. Tenn. July 23, 2007) (citing *United States v. Foster*, 376 F.3d 577 (6th Cir. 2004)). In this case, Defendant concedes that the troopers had reasonable suspicion to stop him for illegally dark window tint. Trooper Connors then smelled marijuana coming from Defendant's vehicle, and Defendant admitted that he had smoked marijuana earlier in the day. Thus, officers had probable cause to search his vehicle for contraband. *Robinson*, 2007 WL 2138635, at *2 (collecting cases) (finding probable cause existed to search the defendant's vehicle when the defendant admitted that he had smoked marijuana earlier and "there was a strong odor of marijuana emanating from his vehicle"). Therefore, the real question here is not whether officers were entitled to search Defendant's vehicle but, instead, whether under applicable law enforcement officers were entitled to search the areas of his vehicle where contraband was found.

If probable cause exists to search a lawfully stopped vehicle, then officers may search the entire vehicle, including containers and compartments therein. *United States v. Bailey*, 407 F. App'x 27, 29 (6th Cir. 2011) (citing *United States v. Ross*, 456 U.S. 798, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982); *California v. Acevedo*, 500 U.S. 565, 111 S.Ct. 1982, 114 L.Ed.2d 619 (1991)); *see also Ross*, 456 U.S. at 825 (holding that "the scope of the warrantless search authorized by that exception is no broader and no narrower than a magistrate could legitimately

authorize by warrant."). The Supreme Court has explained that "[t]he scope of a warrantless search of an automobile ... is not defined by the nature of the container in which the contraband is secreted. Rather, it is defined by the object of the search and the places in which there is probable cause to believe that it may be found." *Acevedo*, 500 U.S. at 579-80 (quoting *Ross*, 456 U.S. at 824).

At issue in this case is which "containers and compartments" officers may lawfully search after smelling marijuana emanating from a vehicle. Defendant contends that the search should be limited to areas where he could reasonably have stored smoked marijuana quickly, such as the floorboards or glove compartment. Cases tackling this issue have typically found probable cause existed to search the trunk or bags in a car. *See e.g.*, *Acevedo*, 500 U.S. 565 (finding probable cause to search a paper bag); *United States v. Jackson*, 63 F. App'x 839 (6th Cir. 2003) (search of the trunk); *Robinson*, 2007 WL 2138635 (search of the trunk). However, a permissible search may also include the actual structure of the vehicle. *See Ross*, 468 U.S. at 823 ("An individual undoubtedly has a significant interest that the upholstery of his automobile will not be ripped or a hidden compartment within it opened. These interests must yield to the authority of a search, however, which-in light of *Carroll* -does not itself require the prior approval of a magistrate.").[7]

In this case, the troopers had probable cause to search Defendant's vehicle based on the smell of marijuana, but probable cause continued to stack up as the search was conducted. Not only did Defendant admit to recently smoking marijuana, but the troopers also found a Percocet

---

[7] Defendant points to two Tenth Circuit cases which held that officers must find some corroborating evidence of contraband before extending a vehicle search beyond the obvious places where contraband might be found. [Doc. 16, p. 7-8]. In *United States v. Nielsen*, the court held that smelling burnt marijuana in the passenger compartment of a car only justified searching the passenger compartment where there was no corroborating physical evidence to support a further search into the trunk. 9 F.3d 1487, 1491 (10th Cir. 1993). Further, in *United States v. Parker*, the court held that officers had probable cause to search the trunk of a vehicle after smelling burnt marijuana inside the vehicle and finding unlawful substances on the defendant's person. 72 F.3d 1444, 1450 (10th Cir. 1995). Defendant asserts that applying this caselaw would lead to a finding that Troopers Connors and Burchett violated the Fourth Amendment in the search of his vehicle. However, this case is distinguishable from *Nielsen* and *Parker,* and even if it was not, binding Sixth Circuit precedent permits the search of an entire vehicle based on the smell of marijuana alone.

pill in plain view in the driver's seat, there was evidence that the driver's side door trim and carpeting had been pulled up, the dashboard revealed pry marks, and there was an easily accessible void around the gearshift which revealed methamphetamine and a scale. Defendant's Motion only addresses the smell of marijuana and his admission that he recently smoked, although the Court notes that during the hearing, counsel also attacked Trooper Connors's testimony that there were visible pry marks on the trim around the driver's side door.[8] However, even if the Court does not consider the pry marks, other facts including the smell of marijuana, the visible Percocet pill, the easily removable center console, and the carpet that appeared to have been removed previously, provide more than enough probable cause to justify the search at issue. This conclusion is based not only on the trooper's testimony but also on the body camera footage. Accordingly, the Court finds that the troopers in this case had probable cause to search Defendant's entire vehicle under current Sixth Circuit precedent.

### IV. CONCLUSION

For the reasons outlined above, the undersigned **RECOMMENDS** that Defendant's Motion to Suppress [Doc. 16] be **DENIED**.[9]

                                                          Respectfully submitted,

                                                          /s/Cynthia Richardson Wyrick
                                                          United States Magistrate Judge

---

[8] During the hearing, defense counsel produced a towing form showing that Defendant's vehicle had numerous areas that were damaged, indicating regular wear and tear. A copy of the form was entered into evidence as Exhibit 2 to the hearing.

[9] Any objections to this report and recommendation must be served and filed within **fourteen (14) days** after service of a copy of this recommended disposition on the objecting party. Fed. R. Crim. P. 59(b)(2). Failure to file objections within the time specified waives the right to review by the District Court. Fed. R. Crim. P. 59(b)(2); *see United States v. Branch*, 537 F.3d 582 (6th. Cir. 2008); *see also Thomas v. Arn*, 474 U.S. 140, 155 (1985) (providing that failure to file objections in compliance with the time period waives the right to appeal the District Court's order). The District Court need not provide *de novo* review where objections to this report and recommendation are frivolous, conclusive, or general. *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986). Only specific objections are reserved for appellate review. *Smith v. Detroit Federation of Teachers*, 829 F.2d 1370, 1373 (6th Cir. 1987).